UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANASTACIA AGUAYO, individually and on behalf of all similarly situated individuals,<br><br>            Plaintiff,<br><br>    v.<br><br>DRYBAR HOLDINGS LLC, a Delaware corporation,<br><br>            Defendant. | |

## **NOTICE OF REMOVAL**

In accordance with 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Drybar Holdings, LLC ("Drybar" or "Defendant") hereby removes the civil action pending in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 2020-CH-06575, to the United States District Court for the Northern District of Illinois, Eastern Division. In support of removal, Drybar states as follows:

     1.     On November 2, 2020, Plaintiff Anastacia Aguayo ("Plaintiff") commenced an action against Defendant by filing in the Circuit Court of Cook County, Illinois a complaint styled as *ANASTACIA AGUAYO, individually and on behalf of all similarly situated individuals v. Drybar Holdings, LLC*, Case No. 2020-CH-06575. (A copy of the Complaint ("Compl.") and summons served upon Drybar is attached hereto as **Exhibit A**). The Complaint seeks relief under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.*, including, among other things, damages of $1,000 to $5,000 for *each* violation of Defendant's negligent and/or reckless violations of BIPA. (Compl. ¶¶ 39-43). Drybar was served with the Complaint on November 16, 2020. (*See* Notice of Service of Process, **Ex. A**).

I. **This Matter Meets All The Requirements Of 28 U.S.C. § 1332(d)(2) For Jurisdiction Under CAFA.**

2. This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants to the United States District Courts original jurisdiction over "any civil action" [1] in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and [2] is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d); *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (noting that the "language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions"). This case meets all the requirements for jurisdiction under CAFA.

3. This matter is a "class action" under CAFA because a "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Complaint purports to allege claims on behalf of a class of "All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant within the state of Illinois at any time within the applicable limitations period." (Compl. ¶ 26). Therefore, this action is properly considered a "class action" under CAFA.

4. The requirement of minimal diversity is also satisfied. Plaintiff is a citizen of the State of Illinois. (*See* Compl. ¶ 10). Defendant is a citizen of a State other than Illinois within the meaning of 28 U.S.C. Section 1332(d). Defendant is now, and was at the time this action

commenced, a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Virginia. Defendant's principal place of business is in California, because its "nerve center" is located in Irvine, California. Drybar's headquarters, where its officers direct, control, and coordinate its activities is in Irvine, California. Per the United States Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010), the appropriate test to determine a corporation's principal place of business is the place where its "officers direct, control and coordinate the corporation's activities." The Irvine corporate office is where Drybar's senior management and high level officers manage its executive and administrative operations, including operations relating to administering company-wide policies and procedures, legal affairs, and general business operations. Therefore, Defendant is a citizen of the State of California pursuant to the "nerve center" test, and a citizen of the State of Delaware pursuant to its organization. As a result, the parties meet the requirement of minimal diversity for purposes of 28 U.S.C. § 1332(d)(2)(A).

5. Further, the "matter in controversy" aggregated across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . ." 28 U.S.C. § 1332(d)(6).

6. For this amount in controversy to be satisfied, there need only be "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). In this regard, the Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v.*

67184014v.2

*Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). Accordingly, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id.* (citing *Brill*, 427 F.3d at 448 (7th Cir. 2005)). This burden thus "is a pleading requirement, not a demand for proof." *Id.* (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

7. Defendant denies the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that allegedly flow therefrom. But for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiff or the putative class are entitled to damages or penalties or any relief whatsoever—it is apparent that although the complaint does not affirmatively specify a damages figure, the aggregated claims of the putative class exceeds CAFA's jurisdictional minimum.

8. The Complaint alleges that Plaintiff worked for Defendant "during the relevant time" and that "Defendant implemented biometric scanning and time-tracking devices and technology to monitor and manage its workers', including Plaintiff's, time on the job." (Compl. ¶¶ 15-16).

9. Given that the Complaint is seeking "$1,000 to $5,000 in statutory damages" for *each* violation of BIPA (Ex. A ¶ 4), while also alleging six separate violations under BIPA, (Compl. ¶¶ 40(a) - 40(f), 43, it is plausible that Plaintiff seeks to recover $6,000 to $30,000 in damages for *each* time they clocked in or out from work over for the entirety of the "applicable time period" she was employed by Defendant.

10. This Court has found the amount in controversy requirement is satisfied when a Complaint alleges a violation of BIPA while also alleging "Plaintiff was required to scan her

4

67184014v.2

fingerprint each time she clocked in for work and clocked out of work." *Peatry v. Bimbo Bakeries USA, Inc.*, 19-cv-2942, 2019 WL 3824205 (N.D. Ill. Aug. 7, 2019) ("[T]he Court agrees with Bimbo that Peatry's complaint and BIPA together can plausibly be read to suggest that a violation of at least some of the BIPA provisions at issue allegedly occurred every time Peatry and the putative class members clocked in and out of work."); *see also Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (a "removing party [ ] only must establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence") (internal quotation omitted).

11. Defendant *does not* agree that Plaintiff is entitled to that measure of damages under BIPA,[1] but, for removal purposes only, the question is not "what damages the plaintiff will recover, but only how much is *in controversy* between the parties." *Id.* (emphasis in original).

12. An application of the damages theory set forth above to the more than "hundreds" of persons who Plaintiff alleges to be in the class, Compl. ¶ 28, would well exceed the jurisdictional threshold. Plaintiff alleges that each class member is entitled to recover $30,000 for every individual scan of biometric information. Assuming only 100 class members aside from Plaintiff, the putative class would only need to average 1 total day of work (two scans) to have a claim over $5,000,000 in the aggregate.[2] *See Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2019 WL 3824205, at *2 (N.D. Ill. Aug. 7, 2019) ("Treating each scan as a separate violation, Peatry would only need to have scanned her fingerprint sixteen times to exceed the $75,000 threshold, which she plausibly did many more times over the course of her thirty months

---

[1] Defendant denies that Plaintiff alleges an actionable violation of BIPA each and every time she clocked in and out because, among other things, such a result would conflict with a plain language of the statute and would raise serious constitutional and policy concerns. Nonetheless, for purposes of removal, Plaintiff's allegations and requested relief, and the plausible inferences drawn therefrom, must be accepted as true for purposes of determining the amount in controversy. *See generally CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

[2] $5,000,000/(100*30,000) = 1.67$ scans.

of employment. Alternatively, Bimbo claims that the Court has jurisdiction under CAFA, with a class of at least 300 members needing to only scan their fingerprints four times each to exceed CAFA's $5 million amount in controversy requirement.")

13. Moreover, Plaintiff, and the putative class are seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (similar).

14. Defendant denies that Plaintiff, and the putative class could recover any damages, much less any damages for "willful" violations of BIPA, but for purposes of determining whether subject matter jurisdiction exists under CAFA, the amount in controversy is satisfied.[3]

---

[3] Defendant further clarifies that he even though Plaintiff is not entitled to *any* damages for any claim under Section 15(a) of the BIPA, first and foremost because Defendant did not violate the statute, Plaintiff nonetheless has Article III Standing to pursue a Section 15(a) claim because Plaintiff alleges Defendant retained her biometric information. (Compl. ¶¶ 14-24); *see Fox v. Dakkota Integrated Sys.*, LLC, No. 20-2782, 2020 WL 6738112, at *7 (7th Cir. Nov. 17, 2020) ("An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does. Just as section 15(b) expressly conditions lawful collection of biometric data on informed consent, section 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected. The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime. It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data.").

67184014v.2

## II. Diversity-Of-Citizenship Jurisdiction Exists Because The Parties Are Citizens Of Different States And The Amount In Controversy Is Satisfied.

15. Complete diversity exists between the parties. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 458 (7th Cir. 2018) (diversity of citizenship jurisdiction "requires complete diversity between the parties"). Plaintiff is a citizen of the State of Illinois (*see* Compl. ¶ 10), and Defendant is not a "citizen" of Illinois. (*See supra* ¶ 4.) The parties thus are completely diverse and, because Defendant is not a citizen of the state in which the action was brought, *see* 28 U.S.C. § 1441(b)(2), the "citizenship" component of the removal analysis is satisfied.

16. The amount-in-controversy requirement is satisfied, as well. While the complaint does not affirmatively specify a damages figure, and while Defendant denies any liability whatsoever as to Plaintiff's claims, the amount-in-controversy requirement is satisfied because, according to the Complaint, it appears that Plaintiff is seeking damages in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 135 S. Ct. 547, 554, (2014) ("a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). It is plausible that Plaintiff seeks to recover $6,000 to $30,000 in damages for each time she clocked in or out from work over for the entirety of the "relevant time" they were employed by Defendant. Accordingly, Plaintiff would need little more than two days' worth of clocking in and out to satisfy the amount in controversy as to each Plaintiff.

17. Plaintiff is also seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for injunctive relief, "the amount in

7

controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (similar). Therefore, Plaintiff's additional requested relief further sustains that more than $75,000 is at issue.

### III. Defendant Has Satisfied the Procedural Requirements for Removal.

18. Given that the Complaint does not affirmatively and unambiguously allege the total amount of damages being sought, and given that Defendant has received no other pleading or other paper that affirmatively and unambiguously discloses the amount of monetary damages sought, this Notice of Removal is timely. *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (2103) ("The 30-day removal clock [under CAFA] does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present. With respect to the amount of controversy in particular, the pleading or other paper must specifically disclose the amount of monetary damages sought.") This Notice of Removal is timely because it is being filed within 30 days of Defendant's receipt of the Summons and Complaint on November 16, 2020, and within one year of the commencement of this action. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does

not run until a party has been formally served with the summons and complaint under the applicable state law).

19. Because this action is brought in the Circuit Court of Cook County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(a)(1). This District and this Division embraces Cook County, Illinois, the place where the removed action has been pending. *See* 28 U.S.C. § 93(a)(1); 28 U.S.C. § 1441(a).

20. In accordance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served on Defendant have been attached as **Exhibit A**.

21. In accordance with 28 U.S.C. §1446(d), Defendant will promptly provide written notice to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Court for the Circuit Court of Cook County, Illinois.

\* \* \*

For the foregoing reasons, Defendant hereby removes this case from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois, Eastern Division and further requests that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

Dated: December 15, 2020                          Respectfully Submitted,

*Drybar Holdings, LLC*

*/s/ Thomas E. Ahlering*
One of Its Attorneys

Thomas E. Ahlering
tahlering@seyfarth.com
Andrew R. Cockroft
acockroft@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000

Chicago, Illinois 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

*Counsel for Defendant Drybar Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I, Andrew R. Cockroft, an attorney, do hereby certify that I have caused a true and correct copy of the foregoing **NOTICE OF REMOVAL**, to be filed through the Court's CM/ECF system, and will serve the below Counsel of Record via email:

>Kasif Khowaja
>THE KHOWAJA LAW FIRM, LLC (Firm ID: 58402)
>8 South Michigan Ave. Suite 2600
>Chicago, IL 60603
>Tel: (312) 201-0575
>kasif@khowajalaw.com

>*/s/ Andrew R. Cockroft*